# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* ) <br> *or identify the person by name and address)* ) <br> Records maintained by Pinger, Inc. pertaining ) <br> to the user account associated with phone ) <br> number 414-914-7672 ) | Case No. 20-1011M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the  Northern  District of  California
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before  August 6, 2020  *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  Honorable Nancy Joseph  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  July 24, 2020 @ 4:18 p.m.     *[signature]*
                                                    *Judge's signature*

City and state:  Milwaukee, Wisconsin     Hon. Nancy Jospeh, U.S. Magistrate Judge
                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
|     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

# ATTACHMENT A
**Property to Be Searched**

This warrant applies to information associated with the Pinger account assigned to phone number 414-914-7672 that is stored at premises owned, maintained, controlled, or operated by Pinger, Inc., a company headquartered at 97 South 2nd Street, Suite 210, San Jose, CA, 95113.

# ATTACHMENT B
## Particular Things to be Seized

**I.     Information to Be Disclosed by Pinger, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Pinger, Inc. regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Pinger, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Pinger, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

(a) All records and subscriber information pertaining to the identification of the account utilizing Pinger number 414-914-7672; to include: Pinger phone number, Pinger account ID, Pinger application, IP address at account creation, device information, name, Pinger username, third-party email address, registered phone number, and physical address if available;

(b) Length of service including date account was established and terminated (If applicable);

(c) Call Data Records, identifying any and all details about telephone calls that were placed from Pinger number 414-914-7672 or to Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include the Start Date/Time and End Date/Time for when the call took place, From Number, To Number, and the time duration of the call;

(d) Detailed Message Logs, identifying any and all details about messages (SMS and MMS) that were sent from Pinger number 414-914-7672 or to Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include the Date/Time that a message was received/sent, From Number, and To Number(s);

(e) Message Content, identifying any and all stored message communications (SMS and MMS) for the user of Pinger number 414-914-7672 between **November 1, 2018 and the Present,** to include all incoming and outgoing messages or emails for the time period;

(f) Internet Protocol Address Logs, identifying any and all of the internet protocol addresses reported by the user of Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include the IP addresses and the Date/Time they were captured to Pinger's servers;

(g) All other records or other information stored by Pinger, Inc. for the user of Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include voicemail, group chat, MMS picture & video messaging, and emojis; and

(h) All records pertaining to communications between Pinger, Inc. and any person regarding the account between **November 1, 2018 and the Present**, to include contacts with support services and records of actions taken.

## II.     Information to Be Seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2) (sex trafficking of a child); Title 18, United States Code, Sections 1591(a)(1) and (b)(1) (sex trafficking by force, fraud, and coercion); and Title 18, United States Code, Section 1594(b) (conspiracy to engage in sex trafficking) involving Tyvex Benford including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence of the crimes under investigation, including preparatory steps taken in furtherance of such activity, and steps taken after such activity to hinder and prevent apprehension and identification, or evidence that may refute the subscriber's involvement in such activity;

(b) Evidence indicating how and when any relevant account was accessed or used, to determine the geographic the geographic and chronological context of account access, use, and events relating of the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation; and

(d) Evidence regarding the identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate the evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in

addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                    )     Case No.    20-1011M(NJ)
Records maintained by Pinger, Inc. pertaining to the )
user account associated with phone number )
414-914-7672 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    Northern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:1591(a)(1) & (b)(2) | Sex trafficking of a child |
| 18:1591(a)(1) & (b)(1) | Sex trafficking by force, fraud and coercion |
| 18:1594(b) | Conspiracy to engage in sex trafficking |

The application is based on these facts:
See affidavit attached.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Blake Shubert
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by *(specify reliable electronic means)*.

Date: July 24, 2020

*Judge's signature*

City and state: Milwaukee, Wisconsin      Honorable Nancy Joseph
*Printed name and title*

I, Blake Shubert, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and I have been so employed since July 7th, 2019. I am assigned to the Violent Crimes Squad (VC-1) in the Milwaukee Field Office, where I work human trafficking matters as part of the Wisconsin Human Trafficking Task Force.

2. As part of my duties, I investigate the illegal trafficking of persons for the purposes of labor and commercial sex acts. My formal training and experience includes the FBI Academy in Quantico, Virginia, where I received comprehensive training in a variety of investigative and legal matters. This included conducting criminal investigations, drafting and executing search and arrest warrants, and interviewing witnesses, victims, and subjects. In addition, I have participated in multiple training events on conducting human trafficking investigations led by members of the Wisconsin Human Trafficking Task Force. Since joining my squad in Milwaukee, I have gained experience as a case agent and a co-case agent leading and supporting multiple investigations, conducting operations, and consulting with law enforcement partners employed by local, state, and federal law enforcement agencies. My field experience as a Special Agent includes obtaining search warrants and collecting and analyzing evidence related to electronic media, telecommunications, social media, and digital devices.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

1

4. Throughout this affidavit, "case agents," "officers," "detectives," or "investigators" refers to the federal, state, and local law enforcement officers who have participated directly in this investigation, and with whom I have had regular contact regarding this investigation; including: law enforcement officers from the FBI, the Kenosha Police Department (KPD), the Racine Police Department (RPD), the Racine County Sheriff's Office (RCSO), the Racine Human Trafficking Task Force (RHTTF), the Milwaukee Police Department (MPD), and the Milwaukee County Sheriff's Office (MCSO).

## PURPOSE OF THIS AFFIDAVIT

5. I make this affidavit in support of an application for a search warrant under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Pinger, Inc. to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the user account associated with phone number 414-914-7672. Such information is stored at premises owned, maintained, controlled or operated by Pinger, Inc., an electronic communication service provider located in San Jose, California.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Tyvex Benford has committed violations of federal law, including: sex trafficking of a child, in violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(2); sex trafficking by force, fraud, and coercion, in violation of Title 18, United States Code, Sections 1591(a)(1) and (b)(1); and conspiracy to engage in sex trafficking, in violation of Title 18, United States Code, Section 1594(b). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B, Part I, in accordance with the proposed search procedure, described in Attachment B, Part II. This Court has jurisdiction to issue the requested

warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).]

## **PROBABLE CAUSE**

7. On the evening of November 16, 2019, KPD, with the support of the Racine Human Trafficking Task Force, set up an undercover sting operation targeting a then-16-year-old female whose identity is known to law enforcement, referred to hereinafter as JV-1. Detectives had located an online commercial sex ad for JV-1 on a website called Skipthegames.com. The ad instructed customers to contact telephone number 414-914-7672 in order to arrange a date with JV-1.

8. An undercover investigator texted the listed number and arranged to meet JV-1 at the truck stop located at the Pilot Travel Center in Franksville, Wisconsin. At approximately 5:42 PM, JV-1 arrived at the Pilot Travel Center in a silver Ford Focus, license plate AGW-2161, being driven by a black male. The Ford Focus parked at pump number six, and JV-1 exited the vehicle wearing a bright pink shirt. After confirming the identify of JV-1, a Racine Human Trafficking Task Force Officer made contact with her and took her into custody.

9. Immediately after JV-1 was taken into custody, KPD detectives responded to stop the Ford Focus, following it with their marked squad car as it left the scene and entered onto the northbound ramp of I-94. Maintaining visual contact with the Ford Focus the entire time, the detectives activated their squad car's emergency lights and siren. The Ford Focus did not immediately stop, and the squad continued to pursue it for more than six miles. Finally, a Racine County Sheriff marked squad successfully stopped the Ford Focus after it exited I-94 at Highway G (exit 327). Two black males, identified as Tyvex Benford and Charles O'Berry, were inside the

vehicle and taken into custody. Benford was the driver. A silver iPhone and $951 in cash were found on Benford's person at the time of his arrest.

10. KPD interviewed JV-1 following her arrest on November 16, 2019. She admitted that she had been engaging in commercial sex and that Benford was her pimp. JV-1 said she had known Benford for around one year. In addition, she indicated that she sold and delivered narcotics (usually crack cocaine) for Benford. JV-1 stated that she was the only person working for Benford and that he handled and kept all the money.

11. Furthermore, JV-1 said that the phone found in her possession when she was arrested was not the phone used to arrange sex dates. Instead, JV-1's commercial sex dates were coordinated using a cell phone owned by Benford.

12. According to JV-1, Benford and JV-1 both posted ads for JV-1 on various escort websites. When prospective clients responded to the ads, sometimes JV-1 handled the phone, and sometimes Benford did. JV-1 stated that Benford was the person texting with the undercover investigator to arrange the sex date with her at the Pilot Travel Center on November 16, 2019.

13. JV-1 also stated that the last time she had engaged in commercial sex acts was on the night of Thursday, November 14, 2019 at either the Motel 6 or Value Inn Motel in Oak Creek, Wisconsin. (She was unsure because she had worked at both hotels in the past.) JV-1 explained that when customers would arrive at the motel, Benford would go outside and wait in the car until the sex date was completed. Benford would return to the room following the date.

14. JV-1 gave KPD detectives consent to examine the phone found on her person at the time of her arrest. A subsequent examination of that phone confirmed, as JV-1 had indicated, that this was not the phone used to communicate about the sex date at the Pilot Travel Center. The

4

Case 2:20-mj-01011-NJ   Filed 07/24/20   Page 11 of 20   Document 1

examination found no communications between JV-1's phone and the phone number used by the undercover investigator on November 16, 2019.

15. There were, however, text communications of note between JV-1's phone and someone using phone number 414-628-1226, saved in JV-1's phone as a contact with the name "My Crazy Husband." Based on the contents of the communications between that contact and JV-1, this number appears to have been used by Benford. Additionally, Benford provided the number ending in -1226 to KPD when he was taken into custody.

16. The examination of JV-1's phone showed that at 5:01 p.m. on November 16, 2019, JV-1 texted Benford asking if they could reschedule "dude" for after 6 p.m. when they get "the car." Benford responded, "No he gotta get back ona road." (The undercover officer noted that in his text conversation with Benford, it was actually Benford—posing as JV-1—who told the undercover, "I have something to do around 6 pm baby.")

17. The examination of JV-1's phone also showed that JV-1 had sent Benford a screenshot of her Google Map navigation screen, showing that they had 15 miles to go before the next turn on Highway K (exit for the Pilot Travel Center in Franksville, WI), 16 total miles until they reached the final destination, 18 minutes total trip time remaining, and an estimated time of arrival of 5:42 p.m. This appears to have been in furtherance of the dialogue going on between the undercover and Benford on the other phone. At 5:19 p.m., the undercover texted 414-914-7672 (JV-1's escort ad number), "U still comin right babe?" Benford responded, "Yes" and "I'm on the highway." At 5:23 p.m. the undercover replied, "Does it say how long?" Benford replied to the undercover with the same Google Maps screenshot that JV-1 had sent him.

18. As noted above, the telephone number tied to the Skipthegames.com escort ad for JV-1, and with which the undercover investigator communicated to arrange a sex date with JV-1

5

on November 16, 2019, was 414-914-7672. FBI investigators determined that there were twenty-six ads posted on that site for JV-1 using that phone number between November 12, 2019 and November 16, 2019. Thirteen of the ads were for Racine, Wisconsin, and another thirteen were for Milwaukee, Wisconsin. There were an additional 128 ads posted for JV-1 on Skipthegames.com and Onebackpage.com between October 29, 2019 and November 13, 2019.

19. Open source research performed by FBI investigators identified the number 414-914-7672 as belonging to Bandwidth, Inc., which is a nationwide communications and VoIP (Voice-over-Internet Protocol) service provider primarily serving business customers. Many of their customers use their VoIP services in a wholesale manner, offering services of their own together with a Bandwidth telephone number to their end users.

20. Investigators contacted Bandwith, Inc., who provided the wholesale customer for the phone number 414-914-7672 as Pinger, Inc. Pinger partners with Bandwidth to maintain an inventory of available phone numbers that Pinger then makes available for use through Pinger's applications. Pinger maintains records, detailed below, related to its applications and the phone numbers associated with those applications.

21. On June 8, 2020, FBI investigators sent preservation requests to Pinger, Inc. for any accounts associated with telephone number 414-914-7672.

## PINGER, INC.

22. Pinger is an application developer headquartered in San Jose, California. Pinger develops and publishes cross-platform communication applications that can be installed on Android and iOS devices or accessed using a desktop computer. Several Pinger applications allow for messaging, calling, and communication management tools. All communications are made utilizing the user's Wi-Fi, data, or cellular connection. Pinger's applications allow users to select

from available United States or Canadian Pinger phone numbers based on location. Location can be determined either by the user's input of an area code or is reported to Pinger by the user's operating system.

23. Pinger, Inc's communication applications include, 'Pinger,' 'Textfree,' and 'Sideline.'

   a. Pinger is a free calling and texting application that comes preloaded with free calling minutes that can be used to call anyone in the U.S., Canada, or Mexico. After that, minutes are free to earn or cheap to purchase. SMS messages are also free. On top of free calling and SMS, additional features include voicemail, group chat, MMS picture & video messaging, emoji, ringtones, and more.

   b. Textfree is a mobile application that allows users to send and receive free text messages, and to make and receive phone calls over the Internet utilizing a third-party's data connection. Textfree can be used on a computer via a desktop interface and on the Textfree mobile application for Android/iOS devices.

   c. Sideline is a subscription based, mobile application that allows for phone calls to be placed using the Public Switched Telephone Network over the user's communication services, or utilizing the user's data connection, similar to Textfree. Messages are sent through the user's data connection. Sideline is available as a mobile application for Android/iOS devices. Sideline features, utilizing data connections, can also be used via a desktop interface. Additionally, Sideline offers features such as business texting, auto-reply, the ability for a team to share a number.

24. Pinger captures and provides the following types of data and records:

a. Basic subscriber information in the form of a Pinger Customer Information Sheet (PCIS). The PCIS may include the Pinger phone number, Pinger account ID, Pinger application, IP address at account creation, device information, name, Pinger username, third-party email address, and registered phone number;

b. Call Data Records (CDRs), which capture details about calls that are placed from a Pinger number or to a Pinger number. These records will show the Start Date/Time and End Date/Time for when the call took place, From Number, To Number, and the time duration of the call

c. Detailed Message Logs (DMLs), which capture details about messages (SMS and MMS) that are sent from a Pinger number or to a Pinger number. These records will show the Date/Time that a message was received/sent, From Number, and To Number(s);

d. Message Content (MC), which captures the user's stored message communications (SMS and MMS). MC will include the aforementioned DMLs with the content of the user's communication;

e. Internet Protocol Address Logs (IP Logs), which capture the user's internet protocol addresses as they are reported from the user's operating system. These records will show basic IP Addresses and the Date/Time they were captured to Pinger's servers;

25. Therefore, the Pinger servers are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Pinger.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

26. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Pinger, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

27. Based on the forgoing, I request that the Court issue the proposed search warrant.

28. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

29. The government will execute this warrant by serving the warrant on Pinger, Inc. Because the warrant will be served on Pinger, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with the Pinger account assigned to phone number 414-914-7672 that is stored at premises owned, maintained, controlled, or operated by Pinger, Inc., a company headquartered at 97 South 2nd Street, Suite 210, San Jose, CA, 95113.

# ATTACHMENT B
## Particular Things to be Seized

**I.  Information to Be Disclosed by Pinger, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Pinger, Inc. regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Pinger, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Pinger, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

(a) All records and subscriber information pertaining to the identification of the account utilizing Pinger number 414-914-7672; to include: Pinger phone number, Pinger account ID, Pinger application, IP address at account creation, device information, name, Pinger username, third-party email address, registered phone number, and physical address if available;

(b) Length of service including date account was established and terminated (If applicable);

(c) Call Data Records, identifying any and all details about telephone calls that were placed from Pinger number 414-914-7672 or to Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include the Start Date/Time and End Date/Time for when the call took place, From Number, To Number, and the time duration of the call;

(d) Detailed Message Logs, identifying any and all details about messages (SMS and MMS) that were sent from Pinger number 414-914-7672 or to Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include the Date/Time that a message was received/sent, From Number, and To Number(s);

(e) Message Content, identifying any and all stored message communications (SMS and MMS) for the user of Pinger number 414-914-7672 between **November 1, 2018 and the Present,** to include all incoming and outgoing messages or emails for the time period;

(f) Internet Protocol Address Logs, identifying any and all of the internet protocol addresses reported by the user of Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include the IP addresses and the Date/Time they were captured to Pinger's servers;

(g) All other records or other information stored by Pinger, Inc. for the user of Pinger number 414-914-7672 between **November 1, 2018 and the Present**, to include voicemail, group chat, MMS picture & video messaging, and emojis; and

(h) All records pertaining to communications between Pinger, Inc. and any person regarding the account between **November 1, 2018 and the Present**, to include contacts with support services and records of actions taken.

## II.  Information to Be Seized by the Government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1591(a)(1) and (b)(2) (sex trafficking of a child); Title 18, United States Code, Sections 1591(a)(1) and (b)(1) (sex trafficking by force, fraud, and coercion); and Title 18, United States Code, Section 1594(b) (conspiracy to engage in sex trafficking) involving Tyvex Benford including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence of the crimes under investigation, including preparatory steps taken in furtherance of such activity, and steps taken after such activity to hinder and prevent apprehension and identification, or evidence that may refute the subscriber's involvement in such activity;

(b) Evidence indicating how and when any relevant account was accessed or used, to determine the geographic the geographic and chronological context of account access, use, and events relating of the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation; and

(d) Evidence regarding the identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate the evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in

2

addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.